**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

FILED
MAY 31 2011
CLERK, US DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| Ms. Yu Jing ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action # 2:11cv303 |
| ) | |
| Eastern Virginia Medical School, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

**I. INTRODUCTION.**

1. This is a proceeding for damages and equitable relief to redress the deprivation of rights of Plaintiff caused by Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et. seq.

**II. JURISDICTION.**

2. The jurisdiction of the Court over this controversy is based on 42 U.S.C. §2000e-5(f), 28 U.S.C. §1331 and upon 28 U.S.C. §1343.

**III. VENUE.**

3. The unlawful employment practice that the Plaintiff alleges to have been committed and where employment records relevant to such practices are located is in Norfolk, Virginia where the Defendant has its main office. Thus venue properly lies in the Federal District Court for the Eastern District of Virginia under 42 U.S.C. §2000e-5(f), and 28 U.S.C. §1391(b) and in the court's Norfolk Division under Local Rule 3(b) and 3(c) of the Eastern District of Virginia.

## IV. PARTIES.

4. The Plaintiff, Ms. Yu Jing, is a female, Chinese-American, who was employed by the Defendant and who was pregnant at the time of her employment termination.

5. The Defendant, Eastern Virginia Medical School, is a governmental instrumentality established by the General Assembly of the State of Virginia, that can sue and be sued.

6. The Defendant employs more than 500 individuals.

7. The Defendant is an employer within the meaning of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e (b).

## V. STATEMENT OF FACTS.

8. The Plaintiff was hired by the Defendant on September 4, 2001 as an employee.

9. The position occupied by the Plaintiff was designated as "Research Associate II."

10. The Research Associate II position was in the Department of Internal Medicine at the Glennan Center of Geriatrics and Gerontology (Glennan Center).

11. The Glennan Center has a laboratory section and a clinical section.

12. The Plaintiff worked in the laboratory section.

13. Effective January 1, 2006, the Plaintiff changed her status and accepted a position as a Graduate Research Assistant.

14. On September 1, 2006, the Plaintiff was re-hired by the Defendant as an employee in the position of Research Associate II.

15. The Plaintiff received positive performance reviews and pay raises while employed with the Defendant as a Research Associate II.

16. The Plaintiff was qualified for her position and met the legitimate job expectations of the Defendant while she was employed in the position of Research Associate II.

17. Plaintiff was notified by letter on December 10, 2007 that she was going to be terminated from her position.

18. The effective date of the employment termination was January 11, 2008.

19. The person who signed the letter of employment termination was Dr. Leon Georges, Chairman, Department of Internal Medicine of the Defendant.

20. On information and belief, the person who made the decision to terminate the Plaintiff was Dr. Leon Georges.

21. In the letter, Dr. Georges stated the Plaintiff's position as a Research Associate II was being eliminated due to lack of secure funding.

22. At the time Plaintiff was notified that she was being terminated, there were four research technician positions in the laboratory section.

23. Two of those positions were Research Assistant positions and were filled by Mr. Dean Howard and Ms. Noeline Guillaume.

24. The other two positions were Research Associate II positions and were filled by the Plaintiff and Ms. Norine Kuhn.

25. Mr. Dean Howard is a Caucasian male.

26. Ms. Noeline Guillaume is an African American female.

27. Ms. Norine Kuhn is a Caucasian female.

28. The Defendant eliminated both Research Assistant positions and one of the two Research Associate II positions.

29. The Defendant claims that it had to eliminate these positions because of a budget deficit.

30. As a result of the Defendant's action, Ms. Noeline Guillaume, Mr. Dean Howard and the Plaintiff lost their positions at the Glennan Center.

31. Ms. Norine Kuhn retained her position at the Glennan Center.

32. The Plaintiff was pregnant at the time she was notified that her employment was being terminated.

33. Dr. Georges and other employees at the laboratory knew that the Plaintiff was pregnant at the time she was terminated.

34. Ms. Noeline Guillaume was pregnant at the time her position was eliminated at the Glennan Center.

35. Ms. Guillaume was offered and accepted a transfer to Diabetes Center of the Defendant.

36. On information and belief, the person who terminated Ms. Guillaume's employment at the Glennan Center, and the person who hired Ms. Guillaume at the Diabetes Center were two different individuals.

37. The Plaintiff and Mr. Howard had their employment terminated.

38. The Defendant contends that it selected Ms. Norine Kuhn to retain her position at the Glennan Center rather than Plaintiff because she was better qualified than the Plaintiff.

39. The real reason the Defendant did not select the Plaintiff for retention was because she is an Asian and was pregnant at the time her employment was terminated.

40. The Defendant's explanation for terminating the Plaintiff is pre-textual to hide the fact that it discriminated against the Plaintiff because of race (Asian) and sex (pregnancy).

41. The Plaintiff was better qualified than Norine Kuhn to be retained in the Glennan Center.

42. Dr. Yuping Deng, the Scientific Director of the Laboratory at the Glennan Center, wrote Dr. Leon Georges, Chairman of the Department of Internal Medicine, a letter on December 12, 2007 stating that the Plaintiff was the only technician that "can reasonably be expected to perform all the tasks at hand in our group alone."

43. Dr. Deng went on to write that without the Plaintiff, "some basic needs of our group are simply not covered."

44. Dr. Deng attached to her letter a chart that listed the basic functions of the laboratory and then compared who was best qualified to perform those functions.

45. Dr. Deng's chart stated "yes" with respect to whether Plaintiff could perform Flow Cytometer Operations while she stated Ms. Kuhn had "limited, little experience overall, no experience with cells" in terms of operation of the Flow Cytometer.

46. The Flow Cytometer was used for analyzing cells.

47. Dr. Deng also stated "yes" in her chart with respect to whether the Plaintiff could perform flow Cytometer maintenance and troubleshooting while she stated "no" with respect to Ms. Kuhn's ability to perform this function. Dr. Deng noted in her chart

that it "takes 3 months of training and more practical experience" to perform this function.

48. Dr. Deng also stated "yes" with respect to whether the Plaintiff can perform immuno-fluorescent staining and she marked "no" with respect to whether Ms. Kuhn could perform this function.

49. Dr. Deng also stated "yes" with respect to Plaintiff's knowledge of Immunology/Virology while she characterized Ms. Kuhn's knowledge as limited.

50. In summary, Dr. Deng, the Scientific Director of the Laboratory at the Glennan Center, was of the opinion that the Plaintiff had all of the skills necessary to keep the Laboratory running while Ms. Kuhn did not have the qualifications to cover all of the ongoing work.

51. Dr. Stefan Gravenstein, former Director of the Glennan Center, believes that the Plaintiff is more qualified than Ms. Kuhn to (a) run the Flow Cytometer and to do maintenance and trouble shooting on the Flow Cytometer; (b) to conduct Immuno-fluorescent Staining; (c) to do cell culture work; and (d) to do Peripheral Blood Mono-Nuclear Cell (PBMC) Isolation. He also believes that the Plaintiff has more knowledge than Ms. Kuhn on immunology/virology issues. All of these activities are major elements of the laboratory work.

52. The Defendant was not being truthful when it claimed that Ms. Kuhn was selected because she was better qualified than the Plaintiff.

53. The Defendant's selection for retention of Ms. Kuhn, a less qualified, non-pregnant Caucasian, over the Plaintiff, an Asian who was better qualified and who was pregnant at the time of the selection, when combined with the fact the Defendant did not

6

tell the truth as to why Ms. Kuhn was selected for retention, establishes reasonable cause to believe that the Defendant was motivated by race and sex (pregnancy) in its decision to terminate the Plaintiff.

## VI. ADMINISTRATIVE EXHAUSTION.

54. The Plaintiff filed a charge with the EEOC on May 8, 2008 stating that she was "laid off because of my race, Asian, and my sex, female (pregnancy) in violation of Title VII of the Civil Rights Act, as amended and the Virginia Human Rights Act, VA Code 2.2-3900 et. seq." The EEOC charge document also states that the charge was presented to the EEOC and the FEPA (Fair Employment Practice Agency), which in Virginia is the Virginia Council on Human Rights.

55. The date the Plaintiff filed a charge with the EEOC is within 300 days of being notified of the decision to terminate her employment.

56. The EEOC made a determination on September 22, 2010, that reasonable cause existed to believe that the Plaintiff was laid off because of her race, Asian and sex, female (pregnancy).

57. In reaching this determination, the EEOC rejected the argument of the Defendant that Ms. Kuhn, the Research Associate retained, had stronger qualifications than the Plaintiff.

58. The EEOC specifically found that the Plaintiff could perform experiments that the individual retained, Ms. Kuhn, could not perform, making the Plaintiff more qualified.

59. The Department of Justice issued a right to sue letter to the Plaintiff on March 7, 2011.

60. The Plaintiff has exhausted all preliminary steps prior to filing a complaint in federal court for race and sex (pregnancy) discrimination.

## VII. DAMAGES TO PLAINTIFF.

61. As a result of being terminated from employment, the Plaintiff lost an unspecified amount of wages and other benefits that she would have received had her employment not been terminated.

62. The Plaintiff suffered emotional distress as a result of being terminated from employment for racial and sex (pregnancy) reasons.

## VIII. STATEMENT OF CLAIM.

63. The Plaintiff incorporates the allegations set forth in paragraphs 1-62.

64. The Plaintiff contends that the Defendant violated Section 703 (a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) when it terminated Plaintiff's employment because of race (Asian) and sex (pregnancy).

## IX. PRAYER FOR RELIEF.

65. WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendant, and prays that this Court:

a. adjudge and decree that the Defendant has violated Title VII of the Civil Rights Act of 1964, as amended;

b. award actual damages for back pay and other employment benefits for the amount proved at trial;

c. award front pay for a time period determined by the court to be reasonable in lieu of reinstatement;

d. award compensatory damages for emotional pain and suffering in the amount of $300,000;

e award prejudgment interest, and all costs and attorney fees, as provided by Title VII of the Civil Rights Act of 1964, as amended; and

f. grant any other equitable and legal relief to which Plaintiff may be entitled.

### X. JURY DEMAND.

66. Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial for all issues that can be triable by the jury.

Dated: May 31, 2011


Ms. Yu Jing



By: _____
David Pearline, Counsel to Plaintiff

David Pearline, Esq.
Virginia bar number: 46058
Attorney for Plaintiff
Law Office of David Pearline
1064 Laskin Road, Suite 22C
Virginia Beach, Va. 23451
(757)-428-8828 (Phone)
(757)-428-8828 (Fax)
davidpearline@msn.com